UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

ROBERT E. SHIRK,

     Plaintiff,

     v.

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

Case No. 1:25-CV-62 JD

## OPINION AND ORDER

Plaintiff Robert Shirk applied for supplemental security income under Title XVI of the

Social Security Act. His claim was rejected, leading to a review by an Administrative Law Judge

("ALJ"), who concluded that Plaintiff was not disabled. The Appeals Council denied Plaintiff's

request for review, and Plaintiff now seeks judicial review in this Court. For the reasons below,

the Court will affirm the Commissioner's decision.

### A. Standard of Review

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as

the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707

(7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits

if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008).

Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The

threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th

Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be

"more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Still the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

## B.  Standard for Disability

Disability benefits are available only to those individuals who can establish disability under the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine

whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform past relevant work; and

5. Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## C. Discussion

### (1) *The ALJ's Decision*

On October 23, 2023, the ALJ issued a decision finding that Plaintiff was not disabled. (ALJ's Decision, R. at 38.) In doing so, the ALJ employed the customary five-step analysis. At Step 2, the ALJ determined that Plaintiff suffered from the following severe impairments: "coronary artery disease, obesity, lumbar spondylosis, cerebral vascular accident, bipolar disorder, hypertension, obstructive sleep apnea, PTSD, and major depressive disorder." (*Id*., R. at 23.) Concerning mental functioning, the ALJ found that Plaintiff has moderate limitations[1] in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (*Id*., R. at 26.)

At Step 4, the ALJ determined Plaintiff's residual functional capacity ("RFC"),[2] finding, in relevant part, that he can perform sedentary work[3] with the following mental limitations: "able to understand, remember, and carry out simple instructions; able to use judgment to make simple work-related decisions; is able to deal with occasional changes in a routine work setting;

---

[1] The areas of mental functioning are based on a five-point rating scale consisting of none, mild, moderate, marked, and extreme limitation. A person has a moderate limitation if his mental functioning "independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(c). A moderate limitation is greater than a mild limitation, which means that mental function is "slightly" limited, but less than marked limitation, which means that the mental function is "seriously limited." *Id*.

[2] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567. "Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10 (S.S.A. 1983).

occasional interaction with coworkers and supervisors, and no interaction with the public." (*Id.*, R. at 30.)

The ALJ posed this RFC to the vocational expert ("VE") as part of a hypothetical question. (R. at 73–74.) The VE testified that there were jobs available in significant numbers in the national economy for such an individual: document preparer, hand mounter, and semi-conductor bonder. (R. at 74.) The VE further testified that if the hypothetical individual were to be absent from work three days per month regularly and continuously, there would be no jobs available for such a person. (R. at 75.) Relying on the VE's testimony, the ALJ concluded "that, considering [Plaintiff's] age, education, work experience, and residual functional capacity, [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (ALJ's Decision, R. at 37.) As a result, the ALJ found Plaintiff to be not disabled.

### (2) *Mental Functioning Limitations*

In his appeal, Plaintiff argues that, despite finding that he has moderate limitations in concentration, persistence, and pace (commonly referred to as "CPP"),[4] the ALJ failed to include corresponding restrictions in the RFC or explain how the existing limits address them. According to Plaintiff, "the RFC has no description of how long Plaintiff can concentrate or remain on task, it fails to describe how long [he] can persist in the workplace without a break, and the RFC

---

[4] Concentration, persistence, and pace refer "to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that [the claimant] understand[s] and know[s] how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(E)(3).

provides no provision for what pace of work Plaintiff can maintain." (Pl.'s Br., DE 17 at 11.) Plaintiff further contends that the ALJ failed to consider the combined impact of his depression and bipolar disorder, which cause Plaintiff to be fatigued, on his ability to persist or maintain proper pace. (*Id.* at 13.) Plaintiff insists that by omitting the CPP limitations from the RFC and thus from the hypothetical to the VE, the ALJ failed to fully apprise the VE of all of Plaintiff's limitations, requiring remand.

"As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). "This includes any deficiencies the claimant may have in concentration, persistence, or pace." *Id.* (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010 ("Among the limitations the VE must consider are deficiencies of concentration, persistence and pace."). "In most cases . . . employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace. The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) (citations omitted). At the same time, "merely employing terms like 'simple,' 'repetitive,' or 'routine' tasks in an RFC does not result in an automatic determination that the RFC is not supported by substantial evidence." *Joesha D. v. Bisignano*, No. 23 C 2103, 2026 WL 540146, at *5 (N.D. Ill. Feb. 26, 2026). Again, what is required instead is that the ALJ "account for the 'totality of a claimant's limitations' in determining the proper RFC." *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020).

When assessing mental RFC, state agency psychological consultants use "a form called Mental Residual Functional Capacity Assessment, which has two relevant components: (1) a checkbox-type worksheet for the psychologist to assess the claimant's limitations and (2) a narrative section that contains a written assessment of the claimant's RFC." *Timothy O. v. Kijakazi*, 2023 U.S. Dist. LEXIS 243488, *6 (S.D. Ind. April 21, 2023) (citing Program Operations Manual System DI 25020.0010(B)(1) and *DeCamp v. Berryhill*, 916 F.3d 671, 675–76 (7th Cir. 2019). "ALJs must consider—but are not required to adopt—the findings of state-agency psychologists." *Id*. (citing 20 C.F.R. § 404.1513). In evaluating these opinions, "[t]he ALJ must consider whether the consultants' narrative RFC assessment 'adequately encapsulates and translates' the checklist." *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (quoting *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015). It's not enough for the ALJ to rely on the narrative RFC recommendations, unless the narrative accounts for all the limitations that an expert has identified "including specific questions raised in check-box of standardized forms." *DeCamp*, 916 F.3d at 676 (7th Cir. 2019); *see also Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019) ("It is well-established that 'both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record.' However, an ALJ may reasonably rely upon the opinion of a medical expert who translates these findings into an RFC determination.") (citations omitted)).

In September 2022, B. Randal Horton, Psy.D., reviewed Plaintiff's medical record. As it pertains to Plaintiff's argument, Dr. Horton found that Plaintiff has sustained concentration and persistence limitation, rating him as moderately limited in three areas: the ability to—

- carry out detailed instructions;
- maintain attention and concentration for extended periods; and

- work in coordination with or in proximity to others without being distracted by them.

(R. at 1161.)

Dr. Horton found that Plaintiff was not significantly limited in other areas, namely, in his ability to—

- carry out very short and simple instructions;

- perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;

- sustain an ordinary routine without special supervision;

-  make simple work-related decisions; [and]

- complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

(*Id*.)

In the narrative portion of the assessment, Dr. Horton opined that "[t]he evidence suggests that the claimant is able to make judgments commensurate with functions of unskilled, simple, repetitive tasks; able to respond appropriately to brief supervision and interactions with coworkers and work situations; [and] able to deal with changes in a routine work setting." (*Id.*)

In January 2023, Maura Clark, Ph.D., reviewed Plaintiff's medical record and offered similar checkbox findings to Dr. Horton, except that, unlike Dr. Horton, she found that Plaintiff was not significantly limited in his ability to work in coordination with or in proximity to others without being distracted by them. (R. at 1173.) In her narrative explanation, Dr. Clark opined that Plaintiff is able to: "understand, carry out and remember simple instructions, able to make judgments commensurate with functions of simple, repetitive tasks; able to respond appropriately

8

to brief supervision and interactions with coworkers and work situations; [and] able to deal with changes in a routine work setting." (R. at 117.)

Consistent with Dr. Horton's and Dr. Clark's narratives, the ALJ assessed in the RFC that Plaintiff is "able to understand, remember, and carry out simple instructions; able to use judgment to make simple work-related decisions; is able to deal with occasional changes in a routine work setting; occasional interaction with coworkers and supervisors, and no interaction with the public." (ALJ's Decision, R. at 30.)

At first glance, by using such terms as "simple instructions" and "simple, work-related decisions," the RFC may appear to defy the jurisprudence holding that RFC limitations to "simple, routine, repetitive tasks" and the like do not adequately account for limitations in CPP. *Winsted v. Berryhill*, 923 F.3d 472, 476 (7th Cir. 2019). But that is not true here because the ALJ incorporated into the RFC the state agency psychological consultants' narratives, who assessed these limitations in summarizing the checkbox responses. *See DeCamp v. Berryhill*, 916 F.3d at 676 (7th Cir. 2019) (recognizing that an ALJ may rely on a doctor's narrative explanation insofar as the narrative accounts for the checkbox limitations). Also important here is that the ALJ explicitly considered the extent to which the moderate CPP limitations affect Plaintiff's mental functioning:

> During the hearing, the claimant testified that when he worked as a Butcher, the voices calmed down, but now that he cannot do the work, he does not have the stuff to keep his mind off things. That being so, the record does not appear to describe ongoing interference with the claimant's concentration, whether auditory hallucinations occurred during appointments (Ex. 5F, 6F, 7F, 9F, 10F, 11F, 14F, 18F, 22F, 25F, 27F, 28F, 29F, 42F). Additionally, even though the claimant did not continue to work, he followed-up with various providers, and he even walked three miles every day to the grocery store and back in October 2022 (Ex. 18F, 22F, 25F, 27F, 28F, 29F, 30F, 42F).

(ALJ's Decision, R. at 30.)

9

> [T]the claimant's testimony about auditory hallucinations – which did not appear to interfere with his focus or concentration during appointments with his own providers—along with fluctuating dysarthria, albeit 100% intelligible speech, supports limiting the claimant to making decisions about simple work, with restricted interactions and work setting changes, as defined [in the RFC]. (Ex. 3A, 6A, 10F, 11F, 14F, 18F, 22F, 25F, 26F, 27F, 28F, 29F, 30F, 31F).

(*Id.*, R. at 33.) In other words, this is not the case where the ALJ, while finding that the claimant is moderately limited in CPP, does not explain how they relate to the RFC. Such was the error in *Moy v. Bisignano*, 142 F.4th 546, 553 (7th Cir. 2025):

> The ALJ found that Moy had limitations in her ability to concentrate, persist, and maintain pace, noting that Moy alleged "difficulty focusing," reported "flashbacks and hallucinations," and demonstrated "distractible attention during psychotherapy visits." AR 17. Perhaps the ALJ might have concluded that, despite these limitations, Moy could nonetheless stay on-task and regularly attend work in a way that would not interfere with her employment. But that was not his reasoning. Instead, "to account" for Moy's limitations, the ALJ concluded that she could work at a "consistent production pace"—which we understand to say that, to account for Moy's limitations, he imposed no additional restrictions. This reasoning fails to build a logical bridge between the limitations found and the residual functional capacity conclusion

*Id.*

What's more, just recently, in considering the same two checkbox limitations as here—the ability to carry out detailed instructions and the ability to maintain attention and concentration for extended periods—the Court of Appeals for the Seventh Circuit held that "[t]he ALJ's RFC determination limiting Cain to performing simple, routine, and repetitive tasks is consistent with the moderate limitations noted [in the] checkbox responses." *Cain v. Bisignano*, 148 F.4th 490, 498–99 (7th Cir. 2025) (citing *Pavlicek*, 994 F.3d at 783).[5]

Similar to the ALJ here, the ALJ in *Cain* determined that the plaintiff had the RFC to perform work at a sedentary level and that "limited him to simple, routine, and repetitive tasks in

---

[5] Although the Commissioner cited *Cain* in its response brief, Plaintiff's reply brief does not attempt to distinguish it from the facts here or otherwise undermine its applicability. In fact, Plaintiff fails to even mention this case.

10

environments with simple changes that occur only occasionally and to jobs where he could perform tasks independently, with only occasional interaction with others." *Id*. at 496. Also, as here, the state agency psychologists found that the plaintiff had moderate limitations in "carrying out detailed instructions" and "maintaining attention and concentration for extended periods." *Id.* at 495. On appeal, the plaintiff argued that remand was necessary because the ALJ discounted the checkbox portions of the state agency psychologists' reports. *Id.* at 498. The Court of Appeals reaffirmed the notion that "'[w]orksheet observations, like those prepared by [the state agency psychologists] are 'medical evidence which cannot just be ignored' in the RFC assessment." *Id*. (quoting *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015). And "[w]hile the ALJ is entitled to rely on the narrative explanation, the ALJ 'still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms such as the ... MRFC forms.'" *Id.* (quoting *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019)). Having acknowledged these principles, the court found, as already noted, that "[t]he ALJ's RFC determination limiting Cain to performing simple, routine, and repetitive tasks is consistent with the moderate limitations noted by [the state agency psychologists'] checkbox responses." *Id*. at 498–499. The court also observed that the ALJ compared the checkbox response noting moderate limitations "with other evidence in the record, like the fact that Cain was typically cooperative and had an appropriate affect during his medical appointments." *Id.* at 499. The court therefore found that "substantial evidence supported the ALJ's RFC determination." *Id*.

In support of his argument that the ALJ's cannot merely rely on catch-all terms like "simple, repetitive tasks," Plaintiff relies on *Crump v. Saul*, 932 F.3d 567 (7th Cir. 2019). But, unlike here, in *Crump*, the ALJ "seemed to recognize" that the plaintiff CPP challenges would

result in being off-task 20% of the workday, but did not incorporate this limitation into the RFC, resorting instead "to the VE's response to the first hypothetical, which asked only about the availability of work for someone who could perform simple, repetitive tasks without incorporating any CPP limitations." *Id.* at 570–71. Here, however, the ALJ made no findings, suggesting that Plaintiff would be off-task during the workday beyond what's tolerated by the employers. *See also Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019) (reversing where the ALJ, "seemingly having in mind someone with 'moderate difficulties with concentration, persistence, and pace,'" asked the VE about a hypothetical individual who would either be off task 20% of the workday or would have two unscheduled absences per month, but then disregarded the VE's response).

As for the third moderate checkbox limitation appearing in Dr. Horton's report—the ability to work in coordination with or in proximity to others without being distracted by them— it is incorporated into both of the psychological consultants' narratives: "the claimant is . . . able to respond appropriately to brief supervision and interactions with coworkers and work situations." (R. at 1161, 1175.) In turn, the ALJ used this limitation in assessing the mental nonexertional limitations: "occasional interaction with coworkers and supervisors, and no interaction with the public." (ALJ's Decision, R. at 30.) While the wording is not identical, the ALJ's RFC reflects the substance of the consultants' findings about the CPP limitations. *See, e.g.*, *Langley v. O'Malley*, No. 22-3008, 2024 WL 3649021, at *4 (7th Cir. Aug. 5, 2024) (no error where "the ALJ only minimally departed from the doctors' opinion," and the "deviation was supported by substantial evidence in the record").

Importantly, Plaintiff identifies no additional functional restrictions that he believes would more accurately translate the psychological consultants' checkbox ratings. *Cf. Bolin v.*

*Saul*, No. 20-CV-348-JDP, 2021 WL 567899, at *6 (W.D. Wis. Feb. 16, 2021) ("But other than invoking the *O'Connor-Spinner* line of cases, [the plaintiff] offers no reason why the consultants' narrative is inadequate. And [the plaintiff] identifies no additional restrictions that would better translate the consultants' ratings."). And to the extent that Plaintiff is under the impression that a finding of a moderate limitation in concentration, persistence, and pace means that he has moderate limitations in each of those individual areas, that assumption is incorrect. *See Lockett v. Saul*, 834 F. App'x 236, 239 (7th Cir. 2020) ("A moderate rating in maintaining concentration, persistence, and pace means the claimant is so limited in at least one of those areas, not necessarily all three. So [the plaintiff] cannot show a need for pace-specific restrictions in his residual functional capacity simply because of the 'moderate' designation; he must have evidence of that need, and he cites none." (citing 20 C.F.R., Part 404, Subpart P, App. 1, § 12.00(F)(3)(f)).

Next, attacking the ALJ's decision from a different vantage point, Plaintiff asserts that the RFC does not include any restrictions in concentration deficiencies accounted for by Consultative Examiner Dan Boen's, Ph.D. (Pl.'s Br., DE 17 at 12.) Plaintiff, however, fails to acknowledge that the ALJ considered Dr. Boen's opinions multiple times and found them unpersuasive in light of the agency psychological consultants' opinions and the lack of evidence that Plaintiff exhibited the same limitations outside of being examined by Dr. Boen. (*See* ALJ's Decision, R. at 27–28.) The ALJ noted repeatedly that, although Dr. Boen "consistently opined that the claimant would have 'difficulty' with concentrating, staying on task, and interacting with Coworkers," this opinion was inconsistent with the overall evidence. (*Id*., R. at 27.) In particular, the ALJ weighed other evidence, ultimately finding Dr. Boen's opinion unpersuasive:

> outside of [the two examinations by Dr. Boen], the record does not describe
> ongoing concentration deficits, even during the few examinations where the

claimant had an abnormal mood (Ex. 5F, 6F, 7F, 9F, 10F, 11F, 14F, 18F, 22F, 25F, 27F, 28F, 29F, 42F). Additionally, before the claimant filed this application, he worked as a Butcher, and did so without medication management for some of the time. Moreover, the claimant testified that when he worked at the butcher shop, the voices calmed down some—he had to work to keep his mind off of it.

(*Id.*, R. at 29; *see also id.*, R. at 27 (finding the state agency consultants' opinions more persuasive and more consistent with the longitudinal evidence).)

Plaintiff also contends that the RFC does not account for "the combined impact depression and bipolar disorder *may* have with Plaintiff's physical conditions, resulting in difficulty persisting or maintaining proper pace. (PL.'s Br., DE 17 at 13 (emphasis added).) But the ALJ's decision may not rest on speculation; rather, it is Plaintiff's burden to show how the impairments limit his ability to work. *See Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018) ("It was [the plaintiff's] burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work."). And to the extent that Plaintiff claims that his depression and bipolar disorder caused him to be fatigued and therefore unable to work, the ALJ considered this allegation, finding that the record did not support the conclusion that fatigue would cause him to be excessively off task. (ALJ's Decision, R. at 34.) In support, the ALJ relied on evidence that, despite Plaintiff's complaints of fatigue, physical exams were largely unremarkable, and his providers noted his heart disease and hypertension to be stable (*Id.*, R. at 32 (citing R. at 3298, 4553–54).) Additionally, in October 2022, six months after he quit working due to alleged fatigue, Plaintiff reported that he was able to walk three miles (*Id.*, R. at 30 (citing R. at 6226).) Regardless of whether the Court agrees with the ALJ, it cannot substitute its judgment for hers, and Plaintiff's argument falls short of compelling a contrary result. *See Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025) ("Put

14

most simply, we will reverse an ALJ's decision only if the record 'compels a contrary result.'" (citing *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021)).

One final thing. Plaintiff also criticizes the ALJ for not discussing Plaintiff's ADHD diagnosis, despite it being a listed diagnosis in the consultative exam reports and a severe impairment in the prior administrative medical findings (Pl.'s Br., DE 17 at 11.) Still, apart from noting this discrepancy, Plaintiff doesn't address the legal effect of this omission. Even so, the Court has considered the ALJ's oversight and finds it harmless for two reasons. First, Plaintiff ties the ADHD only to the CPP limitations (*see* Pl.'s Br. DE 17 at 11), which, as the Court already discussed, have been incorporated into the RFC. Second, the ALJ reviewed Dr. Boen's opinions, who assessed Plaintiff's limitations with the ADHD diagnosis in mind.[6] Moreover, as Plaintiff himself points out, the agency reviewers, whose reports the ALJ considered, included Plaintiff's ADHD diagnosis in arriving at their decisions. Put differently, while the ADHD diagnosis should not have slipped past the ALJ, it presents no additional limitations that should have been included in RFC beyond what the ALJ assessed. Therefore, the error is harmless. *See Bickel v. Saul*, No. 18-CV-1296, 2019 WL 4141234, at *2 (E.D. Wis. Aug. 30, 2019) ("[I]n assessing RFC, an ALJ must consider limitations and restrictions attributable to all medically determinable impairments—whether severe or not. SSR 98-6p. Thus, an error at step two can be deemed harmless if the ALJ properly accounted for the limitations in setting RFC, even if he erroneously found an impairment to be non-severe.").

### D. Conclusion

---

[6] Following his consultative examinations, Dr. Boen diagnosed Plaintiff with ADHD, among other conditions. (*See* R. at 15, 4537.)

For these reasons, the Court AFFIRMS the Commissioner's decision. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: March 13, 2026

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court